IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DICKENS INDUSTRIAL, LLC | ) | CASE NO. B-11-51394 |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH
COLLATERAL AND REQUEST FOR ORDER
GRANTING ADEQUATE PROTECTION**

**NOW COMES** the Debtor in Possession (hereinafter "Debtor"), by and through counsel, and respectfully requests authorization to use cash collateral pursuant to 11 U.S.C. § 364, Bankruptcy Rules 4001 and 9014 and other applicable sections of Title 11 of the United States Code and the Bankruptcy Rules and, in support thereof, shows unto the Court the following:

1. The above captioned Debtor filed a voluntary petition under Title 11, Chapter 11 of the United States Bankruptcy Code on September 8, 2011 ("Petition Date"). Since the filing, the Debtor has operated as a Debtor in Possession.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §§ 105, 361, 363, 364, 1107 and 1108.

3. This is a core proceeding pursuant to 28 U.S.C. § 157.

4. The Debtor is a limited liability company operating in Concord, North Carolina. The Company is involved in the ownership and management of Class C commercial real estate. The Debtor office is located at 9300 Aviation Blvd, Suite B, Concord, North Carolina.

5. The Debtor executed a promissory note with the lender, Fifth Third Bank, N.A. ("Fifth Third" or the "Bank") on April 4, 2007 in the original loan amount of $8,900,000 (the

"Note"). Fifth Third is the successor in interest to First Charter Bank, the original lender. On or about the same date, a deed of trust granted a security interest in certain properties (listed in Exhibit 1) in Cabarrus County to Fifth Third. On or about the same date, an assignment of rents and profits was granted to Fifth Third as well. The Note was also subject to personal guarantee of Mr. Todd H. Dickens ("Mr. Dickens") and Mary M. Dickens ("Mrs. Dickens"). Upon information and belief, the present amount owed under the note is $4,200,000.

6. On or about July 30, 2008 through January 27, 2009, Mrs. Dickens filed domestic complaints (the "Domestic Complaints") against Mr. Dickens. On or about March 10, 2009, a binding arbitration decision (the "Arbitration Decision") awarded to Mrs. Dickens several properties owned by Debtor, listed in Exhibit 2. On or about January 26, 2009, Fifth Third obtained a judgment in the amount of approximately $6,090,868 against the Debtor, Mr. Dickens, and Mrs. Dickens (the "Judgment"). Fifth Third declined to waive its lien rights on tracts of property to be transferred to Mrs. Dickens. This unresolved dispute has directly hindered the ability of this Debtor to restructure its financial affairs.

7. After much negotiation, on or about September 10, 2009, the Debtor and Fifth Third entered into a forbearance agreement (the "Forbearance Agreement"). Under the Forbearance Agreement, the Debtor agreed to pay $5,834,779.23 with a lockbox agreement and an agreed budget. Upon information and belief, Fifth Third did not properly apply the funds to the outstanding debt. In fact, upon information and belief, funds were not properly removed from the lockbox account. Fifth Third also did not honor request for payment of necessary expenses. The Debtor has never received the executed original of the Forbearance Agreement from Fifth Third.

8. The Judgment was obtained by Fifth Third prior to the Forbearance Agreement. The Debtor contests the enforceability of this Judgment based upon grounds which include but are not limited to estoppel.

9. Upon information and belief, Fifth Third sold the debt to Starwood Financial, LLC ("Starwood") in December of 2010. While attempting negotiations with Starwood over the

debt, Starwood moved to place a receiver in control on an emergency basis, with a hearing set for September 8, 2011.  10. At the time of the filing of the petition, the Debtor's secured creditor is Starwood.  Starwood appears to have a first priority lien on the real estate and an assignment of rents. Attached hereto as Exhibit 3, is a projected monthly cash flow statement of the Company for the September 2011 through September 2012.  The budget was internally produced and has not been subject to audit.

10. At the time of the filing, the Debtor does not have in place any credit facility which would allow for it to borrow funds for the purpose of operations, thereby requiring it to use the cash generated from its pre-petition and post-petition operations to pay all expenses incurred in the ordinary course of business.  The cash on hand, cash generated from rents through the operation of the Debtor's business, and the income from the Debtor's business are "Cash Collateral," as that term is defined in 11 U.S.C. § 363(a), then the Debtor is restricted from using the same without either the consent of those parties claiming a secured interest on such Cash Collateral or court approval.

11. The Debtor is therefore in need of authority to use Cash Collateral after the Petition Date.  The Cash Collateral that the Debtor seeks to use will be generated from the collection of rents, based upon the continued operation of the business and the rental of existing properties.  If this authority is not granted to use Cash Collateral to operate the Debtor's business in the ordinary course, it will result in a detrimental impact on the continued viability of the business, would interfere with the prospects of reorganization of this Company, and cause immediate damage to the going concern value. The failure to allow the use of Cash Collateral would, in all likelihood, result in the Company being unable to operate and therefore be placed in a position that it would have to sell assets through a forced liquidation.  The forced liquidation of assets of this Company would be adverse to the interest of the secured creditors, unsecured creditors and all other creditors and parties in interest in this proceeding, including employees of the Debtor.

12. The use of Cash Collateral will be necessary to allow the Debtor to pay its operational needs which includes the cost of maintaining the properties and providing funds for

the payment of wages and other normal expenses incurred in the ordinary course of the Debtor's business and as a result of the filing of the Chapter 11 proceeding. At this time, the Debtor is unable to obtain unsecured credit to enable it to properly obtain the necessary funds for operation of the business and further anticipates it will be on a COD or cash only basis in the Chapter 11 proceeding with many of its vendors. The Debtor has been unable to obtain post-petition secured financing from any alternative source which would allow for the viable operation of the Debtor. The Debtor is continuing to seek such financing but, given the nature of this industry, it is unlikely that any such financing will be available. As a result, unless the Court authorizes the immediate use of Cash Collateral, irreparable damage and injury will be caused to the Debtor, its creditors and all other parties in interest.

13. The Starwood is the only party which the Debtor at this time believes has a lien on rents that would create Cash Collateral, and such secured creditor can be adequately protected as a result of the following:

A. Pursuant to Section 361(2), 363(c), 364(d)(1), the Starwood is granted a post-petition security interest and lien (of the same validity, extent and priority as the Starwood's pre-petition security interest in the Pre-Petition Collateral) in and to: (i) all proceeds from the disposition of any of the Pre-Petition collateral, including Cash Collateral, and (ii) any assets or properties acquired by the Debtor after the Petition Date and the proceeds thereof (i) and (ii) above being herein called the "Post-Petition Collateral" and together with the Pre-Petition Collateral, the same are herein called the "Collateral." The liens and security interests granted to the Bank hereunder shall be limited in amount to the sum of the aggregate diminution subsequent to the Petition Date in the value of the interest of the Bank in the Pre-Petition Collateral (including Cash Collateral) resulting from such utilization or the consumption of the Pre-Petition Collateral and the inadequate replacement of the same by Post-Petition Collateral. Subject to the foregoing, the security interests and liens granted herein shall be valid, perfected and enforceable security interests and liens on the property of the Debtor's estate without further filing or recording of any document or instrument or any other action. This Collateral, as defined herein, shall not include a lien on any proceeds created by avoidance actions or a lien on any avoidance actions of the Debtor as such avoidance action may exist for the benefit of the estate pursuant to

11 U.S.C. §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 553 or 724(a). Furthermore, this Collateral, as defined herein, would not include a lien on any of the petition retainers to professionals and/or any funds distributed to professionals in accordance with the budget as approved by the Court.

B. The use of Cash Collateral shall be authorized pursuant to a court approved budget. Attached hereto and incorporated herein by reference, identified as Exhibit "3," is the proposed Budget for use of Cash Collateral.

14. The use of Cash Collateral will allow the Debtor to maintain its viability, thereby maintaining and protecting the value of the real property assets claimed as security by the Bank. The failure to allow the Debtor to use Post-Petition Collateral would prevent it from continuing proper maintenance, carrying appropriate insurance and otherwise necessary expenses to maintain the collateral. At the time of the filing, all such insurance was in effect and current.

15. It would be in the best interest of the Debtor, its secured creditors, unsecured creditors and all other parties in interest for the Debtor to authorize the immediate use of Cash Collateral by the Debtor for the purposes stated herein. The entry of such Order should be allowed on an Emergency Basis with a preliminary hearing on the same and with Notice of a Hearing on Final Use of Cash Collateral Pursuant to Bankruptcy Rule 4001(b). The immediate hearing concerning the emergency use of Cash Collateral and the relief requested herein should be allowed on shortened notice as it is necessary as indicated herein to allow the Debtor to maintain its viability pending any further rulings on issues relating to the continued use of Cash Collateral. The benefits gained from authorizing the Emergency Use of Cash Collateral as requested herein have a value in excess of the deterioration to the Pre-Petition Collateral of the secured creditors, if any, which would be caused by the inability to use Cash Collateral.

WHEREFORE, the Debtor respectfully requests:

1. An emergency hearing to allow for the emergency use of Cash Collateral for the purposes stated herein;

2. Notice and hearing on the preliminary hearing on the use of Cash Collateral be given by the Court with notice of the same to be given for a shortened periods deemed necessary by the Court with further notice of a final hearing being set on this matter pursuant to notices required by Bankruptcy Rule 4001;

3. The Court, pursuant to the Orders Authorizing the Use of Cash Collateral, grant adequate protection to the interest of the secured creditor as outlined herein;

4. For such other and further relief as the Court deems just and proper.

**THIS** the 8th day of September, 2011.

      *s/Charles M. Ivey, III*
      Charles M. Ivey, III
      Attorney for Plaintiff
      N.C.S.B. #8333

**OF COUNSEL:**

**IVEY, MCCLELLAN, GATTON & TALCOTT, L.L.P.**
P.O. Box 3324
Greensboro, NC 27402
Telephone: 336-274-4658
Facsimile: 336-274-4540

CERTIFICATE OF SERVICE

     THIS IS TO CERTIFY that the undersigned has served a copy of the foregoing via electronic services and/or by depositing the same, enclosed in a postage paid wrapper, properly addressed to the following parties in interest, at their last known address as shown below, in a post officer or official depository under the exclusive care and custody of the United States Post Office, in the manner preserved by law:

Michael D. West, Esq.                 (Electronic Copy Only)
U. S. Bankruptcy Administrator
Via CM/ECF
101 South Edgeworth Street
Greensboro, NC 27401

Al Dickens, Jr.
1740 Maryland Avenue
Charlotte, NC 28209

Bank of the Carolinas
PO Box 347
Advance, NC 27006

Cabarrus County Tax Collector
PO Box 707
Concord, NC 28026-0707

NCDENR
1619 Mail Service Center
Raleigh, NC 27699-1619

City of Concord
PO Box 308
Concord, NC 28026-0308

Misenheimer Construction
1398 Mt. Pleasant Road W
Mount Pleasant, NC 28124

Duke Energy
PO Box 1090
Charlotte, NC 28201-1090

BB&T
Service Center
PO Box 698
Wilson, NC 27894-0698

Blue Cross Insurance
PO Box 2291
Durham, NC 27702-2291

Central Insurance
PO Box 828
Van Wert, OH 45891-0828

Windstream Phone
PO box 9001908
Louisville, KY 40290-1908

Premium Assignment Insurance
PO Box 3100
Tallahassee, FL 32315-3100

Verizon Wireless
PO Box 105378
Atlanta, GA 30348

Dish Network
Dept. 0063
Palatine, IL 60055-0063

PSNC Gas
PO Box 100256
Columbia, SC 29202-3256

Beth T. Hondros, Esq.
Russell Kornegay, III, Esq.
James McElroy, & Diehl, PA
600 South College Street, Suite 3000
Charlotte, NC 28202

G. Lee Martin, Esq.
936 Cooperfield Blvd.
Concord, NC 28025

Gary Redman
4665 Southwest Freeway
Houston, TX 77027

Internal Revenue Service
Centralized Insolvency
PO Box 7346
Philadelphia, PA 19101-7346

James R. MeMay, Esq.
Ferguson, Scarbrough, Hayes & Hawkins
PO Box 444
Concord, NC 28026-0444

Lucas T. Baker, Esq.
The Baker Law Firm, PA
35 Church Street SE, Suite 101
Concord, NC 28025

Matthew James
McKenna Long & Aldridge, LLP
303 Peachtree Street, Suite 5300
Atlanta, GA 30308

Employment Security Commission
PO Box 26504
Raleigh NC 27611

North Carolina Department of Revenue
PO Box 1168
Raleigh NC 27640

R. Bradford Leggett, ESq.
Allman Spry Leggett & Crumpler
380 Knollwood Street, Suite 700
Winston-Salem, NC 27113

Randell F. Hastings, Esq.
77 McCachern Blvd. SE
Concord, NC 28025

William Walt Pettit
Attorney for Starwoods
2701 Coltsgate Road, Suite 300
Charlotte, NC 28211


    This the 8th day of September, 2011.


                                */s/Charles M. Ivey, III*
                                Charles M. Ivey, III
                                Attorney for Debtor-in-Possession
                                NCSB #8333



OF COUNSEL:

IVEY, McCLELLAN, GATTON & TALCOTT, L.L.P.
P. O. Box 3324
Greensboro, NC 27402
Telephone: 336/274-4658
Telefax: 336/274-4540